**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

------------------------------------------------------------X

SALTON, INC.,

               Plaintiff,

      -against-

PHILIPS DOMESTIC APPLIANCES AND
    PERSONAL CARE B.V.,

               Defendant.

------------------------------------------------------------X

PHILIPS DOMESTIC APPLICANCES AND
    PERSONAL CARE B.V.,

               Counterclaim-Plaintiff,

      -against-

SALTON, INC.,

               Counterclaim-Defendant.

------------------------------------------------------------X

No. 03-C-5660 (JHL)

**NOTICE OF MOTION**

To:    James A. Klenk
         Jordan A. Sigale
         Stephen D. Libowsky
         J. Erik Connolly
         Richard Mancino

      **PLEASE TAKE NOTICE** that on Thursday, November 20, 2003, at 9:30 a.m.,

or as soon thereafter as counsel may be heard, we shall appear before the Honorable Joan

H. Lefkow or before any other judge who may be sitting in her place in Courtroom 1925

of the United States District Court for the Northern District of Illinois, Eastern Division,

219 South Dearborn Street, Chicago, Illinois, and non-party Electrical & Electronics,

Ltd.'s Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19

for Failure to Join an Indispensable Party, or, in the alternative, for a Stay Pending

Resolution of a prior pending Hong Kong Litigation, and for leave to file a memorandum

of 28 pages, a copy of which is attached and hereby served on you.


Dated: Chicago, Illinois
November 17, 2003


Respectfully submitted,

YI TUAN & BRUNSTEIN

350 Fifth Avenue
Suite 5411
New York, New York 10118
(212) 947-3330

Of counsel:

Dean T Cho
Kerry E. Connolly

-and-

BEELER SCHAD & DIAMOND

By _Lawrence W. Schad_ (_____)

332 South Michigan Avenue
Chicag, Illinois 60604
(312) 939-6280

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

```
-------------------------------------------------------X
SALTON, INC.,
                    Plaintiff,

        -against-

PHILIPS DOMESTIC APPLIANCES AND
  PERSONAL CARE B.V.,

                    Defendant.
-------------------------------------------------------X
PHILIPS DOMESTIC APPLICANCES AND
  PERSONAL CARE B.V.,

                    Counterclaim-Plaintiff,

        -against-

SALTON, INC.,
                    Counterclaim-Defendant.
-------------------------------------------------------X
```

No. 03-C-5660 (JHL)



## COMBINED MOTION & MEMORANDUM OF LAW OF NON-PARTY E&E
## PURSUANT TO LEAVE OF COURT TO DISMISS OR STAY ACTION

Non-party Electrical & Electronics, Ltd. ("E&E") respectfully submits this

combined motion and memorandum of law in support of its motion: (a) to dismiss this

action, pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19, for failure to join E&E

as an indispensable party, or, in the alternative, (b) for a stay of this action. The Court

authorized E&E to so move and file its motion papers pursuant to Local Rule 5.6, in open

court during a hearing in this matter on November 13, 2003.

21

## STATEMENT OF FACTS[1]

### The Parties

Non-party E&E is a Hong Kong-based manufacturer of electrical home appliances, including coffee makers. (Salton Complaint ¶ 11). Plaintiff Salton, Inc. ("Salton") is a Delaware corporation, with its principal place of business in Illinois, which markets various coffee makers, including a model known as the Melitta One:One ("One:One"). (Salton Complaint ¶¶ 1-3). Defendant Philips Domestic Appliances and Personal Care B.V. ("Philips") is a Netherlands corporation which, *inter alia*, markets coffee makers under various names, including those sold under the Café Senseo name. (Philips Counterclaim ¶ 1, 10, 12; Salton Complaint ¶¶ 6, 7, 10).

### Background of the Parties' Dealings

E&E had, prior to its involvement with the parties to this litigation, extensive knowledge and expertise with the respect to coffee making appliances. (Chen Dec. ¶ 1). This knowledge was gained from years of work in the field, including the manufacture of some "Mr. Coffee" appliances. E&E also worked with Sara Lee in developing a single cup coffee maker.

In 2001, E&E began manufacturing a coffee maker, the Café Senseo, for Philips. Philips, as the "Buyer", and E&E, as the "Supplier", subsequently executed an agreement drafted by Philips, called the "Development and Purchase Agreement," dated November 22, 2001 (the "HK Agreement"), for the purpose of establishing "all the terms and conditions in relation to the sale and purchase of the Products between the Seller and

---

[1] The relevant facts are set forth in the accompanying Declaration of Barry Joseph Yen, Esq. ("Yen Dec."), dated November 17, 2003, the Declaration of Andrew Chen ("Chen Dec."), dated November 17, 2003, the Declaration of Lawrence Schad, Esq., dated November 17, 2003, the respective exhibits annexed thereto, and the cited portions of the pleadings of the parties to this action.

Buyer." The HK Agreement, annexed as Ex. B to the Salton Complaint, contains various provisions relating to intellectual property issues, as well as a choice of forum and law clause.

With respect to intellectual property, Sections 27 and 28 of the HK Agreement[2] establish that intellectual property that belonged to the respective parties prior to the agreement remains their own, property that is created specifically for and as part of the

---

[2] Philips' pleading incompletely and misleadingly cites these sections. (Philips Counterclaim ¶¶ 20, 21). Their full text, (with Philips' material omissions highlighted) are as follows:

27.    Proprietary Information

All specifications, drawings, technical information, data and designs (including appearance designs) furnished by PHILIPS to Supplier (whether before or after the date of this Agreement) in connection with the purchase of Products shall remain the property of PHILIPS and will be maintained in confidence by Supplier to the same extent Supplier protects its own proprietary information.

Unless with the prior written consent of PHILIPS, Supplier shall not disclose, release, copy, duplicate, or in any other manner use proprietary information supplied hereunder by PHILIPS, nor shall extracts be taken therefrom, for a purpose or use unrelated to work performed for PHILIPS hereunder, without PHILIPS' advance written consent, including but not limited to disclosing the same to Supplier's other customers through photographs or other means. Such information shall be used only to manufacture or produce the Products for PHILIPS.

**Notwithstanding anything to the contrary aforesaid, such information shall not be considered proprietary once such information is established, to the reasonable satisfaction of PHILIPS, to be in the public domain otherwise than as a consequence of a breach of the obligation herein undertaken, or if such information shall be established by Supplier, to the reasonable satisfaction of PHILIPS to have been actually known to it previous to its receipt hereunder.**

28.    Product Inventions

Any and all ideas, improvements, developments, discoveries and inventions ("Product Inventions") that could be patented, conceived of, developed, or first reduced to practice by employees of Supplier in the performance of or as a result of the Performance of this Agreement shall become the exclusive property of PHILIPS and may be dealt with by PHILIPS as such, including but not limited to the right to manufacture, use, or sell any products embodying such Product Inventions.

**Upon PHILIPS' request, Supplier further agrees to have its employees execute all papers and documents necessary to vest title of such Product Inventions in PHILIPS, to enable PHILIPS to apply for and obtain patents on such Product Inventions in any and all countries and to assign to PHILIPS the entire right, title and interest thereto, all at PHILIPS' expense.**

project is to be owned by Philips and ideas and information that is in the public domain

or becomes public domain without breach of the agreement is freely used by either party.

(Complaint Ex. B at ¶¶ 27, 28)

The HK Agreement also contains a covenant prohibiting certain direct

competition. Paragraph 35 states:

> Except for the purpose of producing the Products for PHILIPS hereunder,
> Supplier shall not during the term of this Agreement, manufacture or not
> sell to any third party the Products or any products substantially similar to
> the Products.

Importantly, the HK Agreement contains a very specific bargained for forum

selection and choice of law provision. (Chen Dec. ¶ 2) Paragraph 36 states:

> This Agreement and any modification or renewal hereto **shall** be governed
> by the laws of Hong Kong. All disputes under the Agreement shall be
> settled in by the courts of Hong Kong. (Emphasis added).

A substantial number of Café Senseo coffee machines were manufactured by

E&E and sold by Philips. However, in March 2002, the Café Senseo I was discontinued.

Philips introduced a new coffee maker in January 2003, the Café Senseo II, which is not

manufactured by E&E, and is sold only in the European market. To date, Philips has not

attempted to sell the Café Senseo II in the U.S. market. (Philips Counterclaim ¶¶ 14, 15,

23 and 28)

After the Café Senseo I was discontinued, E&E developed and began

manufacturing the One:One, which is marketed and sold by Salton in the U.S. market.

The Café Senseo II and the One:One differ in a number of respects including, *inter alia,*

(i) that the Café Senseo II produces crema (the golden foam that is a distinguishing

attribute of espresso) and (ii) uses a timer system to regulate output, whereas the

One:One (i) produces traditional "American" coffee and (ii) uses a flow meter to regulate output.   (Philips Counterclaim ¶ 16; Salton Complaint ¶¶ 43, 44 and 47)

In March of 2003, Philips wrote to E&E alleging that, by designing and manufacturing the One:One (sold by Salton), E&E was using proprietary information purportedly belonging to Philips, which E&E allegedly learned in manufacturing the Café Senseo.  Philips asserted that E&E's purported conduct was in breach of the HK Agreement.  A copy of that letter is annexed as Ex. B to the Chen Dec.

In June of 2003, Philips wrote a letter to Salton "Re: Coffee Maker Electrical & Electronics Limited" in which Philips: (a) accused E&E of breaching the HK Agreement and other purported obligations by misappropriating allegedly proprietary information from Philips in manufacturing the One:One for Salton; and (b) threatened to sue Salton for tortious interference with the HK Agreement between Philips and E&E.  That letter is annexed as Ex. B to the Chen Dec.


**The Litigations in Hong Kong and Before This Court**

Philips sued E&E in the High Court of the Hong Kong Special Administrative Region (the "Hong Kong Litigation") by "Statement of Claim" dated May 24, 2003 (the equivalent of a U.S. Complaint).  A Copy of the Statement of Claim in the Hong Kong Litigation is annexed to the Salton Complaint as Ex. A (the "HK Complaint").  In the HK Complaint, Philips alleges that E&E misappropriated Philips' proprietary information, obtained in the course of manufacturing the Café Senseo for Philips.  Philips asserts that, by manufacturing the One:One for Salton, E&E is in breach of the parties' course of dealings and Articles 27, 28 and 35 of the HK Agreement and E&E's alleged duty of

confidence. In the HK Complaint, Philips seeks (a) an injunction against E&E's use, disclosure, dissemination of Philips' alleged proprietary information; (b) an injunction against E&E's manufacturing or supplying of the One:One by itself or in conjunction with any third party; (c) an accounting of E&E's profits; and (d) interest, costs and other relief. (HK Complaint (Salton Complaint Ex. A) at ¶ 8).

Philips could have, but chose not to join Salton as a Defendant in the Hong Kong Litigation. (Yen Dec. ¶4).

In response, E&E served and filed its "Defence and Counterclaim" (the "HK Defence", annexed as Ex. B to the Schad Dec.) in the Hong Kong Litigation in August of 2003. E&E denied any liability or wrongdoing, asserting, *inter alia*, that Philips had provided it with no proprietary information, that any information provided by Philips was public knowledge or readily ascertainable from the Café Senseo units themselves after they had been publicly sold. (HK Defence ¶¶ 12, 18). E&E specifically denied that the One:One was substantially similar to the Café Senseo. (HK Defence ¶ 18). E&E's counterclaim seeks monetary damages for Philips' misrepresentations in inducing E&E to expand its manufacturing facilities, at great cost and expense, in anticipation of manufacturing the Café Senseo II, which Philips ultimately arranged to have manufactured elsewhere. (HK Defence ¶¶ 27-34).

Philips' June 2003 letter to Salton prompted Salton initiated this lawsuit seeking a declaratory judgment that (a) it had not tortiously interfered with the Agreement between Philips and E&E (Salton Complaint ¶¶ 66-71), (b) that it had no misappropriated any trade secrets belonging to Philips, and (c) that the One:One manufactured by E&E does not incorporate any proprietary information purportedly belonging to Philips. (Salton

Complaint ¶¶ 60-65). Salton predicates the Court's subject matter jurisdiction over

Salton's claims solely on diversity, pursuant to 28 U.S.C. § 1332 (Salton Complaint ¶

12).

On October 23, 2003, Philips answered Salton's Complaint and asserted

counterclaims against Salton for: (a) the misappropriation of trade secrets by reason of

Salton's alleged receipt of Philips' trade secrets from E&E, in purported violation of

E&E's obligations under the parties' course of dealings and the HK Agreement (Philips

Counterclaim ¶¶ 8, 17-22, 33, 36, 37, 39, 68, 83, 104, 106-114), (b) tortiously interfering

with contract by allegedly inducing E&E to breach the HK Agreement with Philips (see

Philips' Answer ¶¶ 115-121), and copyright infringement. The heart of the Philips's

counterclaim is the assertion that :

> Salton misappropriated Philips trade secrets *by obtaining them from E&E* without
> Philips' consent and using them in the design and creation of Salton's One:One
> appliance."

Counterclaim ¶ 111 (emphasis added).

Indeed, the fundamental predicate of Philips' counterclaim is that E&E breached

the HK Agreement by disclosing proprietary information, allegedly belonging to Philips,

to Salton. E&E's alleged role in the wrongdoing permeates the allegations of Philips'

counterclaims.[3]

Philips' counterclaims in this action seek the entry of (a) a preliminary and

permanent injunction against the manufacturing and sale of the One:One, and (b) an

award of compensatory and punitive damages. Philips predicates subject matter

---

[3] Philips' Counterclaims contains no fewer than 51 paragraphs that explicitly refer to E&E and/or the HK Agreement, and a large majority of the paragraphs contained therein implicate E&E's alleged conduct.

- 7 -

jurisdiction over its counterclaims on diversity, pursuant to 28 U.S.C. § 1332, and copyright infringement against Salton, pursuant to 28 U.S.C. § 1498.[4]

Notably, large portions of Philips' Counterclaims mirror Philips' pleading in the Hong Kong Litigation, including numerous references to the HK Agreement and E&E's and Philips' prior dealings, and Philips seeks largely identical injunctive relief in both actions. **Indeed, in this case, Philips essentially seeks relief against E&E (even though E&E is a non-party) by explicitly seeking a preliminary and permanent injunction against, *inter alia*, the "manufacturing," as well as the sale of, the One:One (Philips' Answer p. 45), which Philips itself acknowledges is manufactured by E&E.** (Philips Answer ¶¶ 11, 33)

Concurrent with its backdoor attempt to seek injunctive relief against E&E in the this action, Philips repeatedly has sought to stall the Hong Kong Litigation by seeking and obtaining multiple extensions of its time to reply to E&E's counterclaim. Indeed, Philips has yet to reply to E&E's counterclaim, which was served almost three months ago, and has just recently made its fourth request for an extension of time to answer, seeking an additional 21 days. (See Schad Dec. Ex. C).

E&E just recently learned that Philips is seeking injunctive relief in this action, which threatens to severely prejudice E&E's rights and interests. E&E also has only recently learned that Philips is aggressively seeking discovery from it and has obtained the issuance of Letters of Request to take such discovery and that Salton did not oppose such letters and indeed also requested discovery of E&E. It is now apparent that despite E&E's bargained-for rights to litigate its disputes arising out of the HK Agreement

---

[4] Contrary to Philips' assertion, 28 U.S.C. §1498 vests federal subject matter jurisdiction over the copyright cases governed thereby exclusively in the Court of Federal Claims.

exclusively in Hong Kong under Hong Kong law, Philips and Salton are seeking to have

E&E's rights under the HK Agreement effectively determined in this action without its

participation. It also became clear that any grant of Philips' motion for a Preliminary

Injunction likely would effectively moot the Hong Kong Litigation. Accordingly, E&E

sought the right, pursuant to Local Rule 5.6, to file this motion as a non-party while

preserving its jurisdictional and venue objections to this action. That request was

granted.[5]


## ARGUMENT

### POINT I

### THIS ACTION SHOULD BE DISMISSED BECAUSE E&E IS AN INDISPENSABLE PARTY UNDER FED. R. CIV. P. 19

"The purpose of Federal Rule of Civil Procedure 19 is to permit joinder of all

materially interested parties to a single lawsuit so as to protect interested parties and

avoid waste of judicial resources." Moore v. Ashland Oil, 901 F.2d 1445, 1447 (7th Cir.

1990) (affirming dismissal pursuant to Fed. R. Civ. P. 19(b)). As explained below,

dismissal of this action would advance both of those goals.

In analyzing Rule 12(b)(7) motions to dismiss for failure to join an indispensable

party, courts apply a two step analysis. Hall v. Tribal Development Corp., 100 F.3d 476,

478 (7th Cir. 1996). First, the court should determine whether the person or entity is a

---

[5] This Court has both the power and the obligation to inquire into the need to join indispensable parties sua sponte. See, e.g., Provident Tradesman Bank & Trust Co. v. Patterson, 390 U.S. 102, 111, 88 S.Ct. 733, 738-739 (1968). Other courts have granted limited intervention for the purpose of asserting the Rule 19 issues. See, e.g. Wyandotte Nation v. City of Kansas City, 200 F.Supp.2d 1279 (D. Kan. 2002). To hold otherwise, would put a non-party asserting the Court's lack of jurisdiction in its absence, such as E&E, in an impossible Catch-22 situation, where its filing of a motion to protect its rights would be deemed a waiver of its jurisdictional objections.

"necessary party" or – in the nomenclature of the Rule, a "party to be joined if feasible"[6]

-- under Rule 19(a). <u>Hall</u>, 100 F.3d at 478. If such a finding is made, and that party

cannot then be joined, the court proceeds to determine whether the person or entity is an

"indispensable party" pursuant to Rule 19(b). <u>Hall</u>, 100 F.3d at 479. A court may grant a

Rule 12(b)(7) motion to dismiss for failure to join an indispensable party prior to the

taking of discovery, particularly where the motion is based on documents elucidating the

relevant issues. <u>Moore</u>, 901 F.2d at 1449.

### A. E&E Is A Necessary Party Under Rule 19(a)

Rule 19(a) has two disjunctive definitions of a necessary party. If either is met

the party is deemed necessary. <u>Tillman v. City of Milwaukee</u>, 715 F.2d 354 (7th Cir.

1983); <u>Hashop v. Federal Home Loan Mortg. Corp.</u>, 171 F.R.D. 208, 211 (N.D. Ill.

1997). Here, Philips' own pleading confirms that E&E is a necessary party under either

and both subparts of Rule 19(a).

### 1. Rule 19(a)(1):

This subpart provides that the party is necessary if "in the person's absence

complete relief cannot be accorded among those already parties." In E&E's absence,

complete relief cannot be accorded between Philips and Salton. With respect to its

counterclaim, Philips expressly seeks the issuance of a preliminary and permanent

injunction against further "manufacturing" of the One:One (Philips Counterclaims p. 45),

notwithstanding Philips' concession that E&E, not Salton, is the manufacturer of the

One:One. (Philips Counterclaims ¶¶ 11, 38, 39) Based on Philips' own allegations, E&E

is a necessary party under Rule 19(a). <u>Doughan v. Tutor Time Child Care Systems, Inc.</u>,

---

[6] Although <u>Hall</u> points out the formal terminology of the rule, in that case the Seventh Circuit continuously refers to a party to be joined if feasible as a "necessary party." Accordingly, E&E will employ that common terminology throughout this brief.

1996 WL 502288 at *2 (E.D. Pa. 1996)(entity is "necessary party" where it would be impossible to grant plaintiff's requested relief in entity's absence, given entity's extensive involvement in relevant transactions). This point is confirmed by the fact that Philips purports to seek essentially the same relief in the Hong Kong Litigation.

As the court in Hashop explained, Rule 19(a) is satisfied where the litigant:

> seek to impose liability on a party not for its own positive acts but for the positive acts of another not joined in the suit. In such a case, it is the conduct of the absent party and their future actions which are the subject matter of the suit. The absent parties thus become more than key witnesses, but essential to ensuring complete relief to the parties.

171 F.R.D. at 211, citing Tillman, 715 F.2d at 358 and Martin v. Local 147, Intern. Broth. of Painters and Allied Trades, AFL-CIO-CFL, 775 F. Supp. 235, 237 (N.D.Ill.1991).

Similarly, looked at from the perspective of Salton's Complaint, it appears complete relief cannot be granted in this case. Salton essentially seeks to stop Philips' claims to the One:One technology. If this Court were to grant Salton's requested relief, it is unclear if Philips would view itself as bound by that determination such that it would be required to dismiss the Hong Kong Litigation. If Philips argues that, in such an event, it would not be required to dismiss the Hong Kong Litigation, Philips necessarily is asserting that complete relief cannot be granted (because no matter what this Court does in this case with respect to Salton's request for declaratory judgment, a cloud would still hang over production of the One:One). Alternatively, if Philips were to assert that the collateral estoppel effect of a judgment in Salton's favor would end the Hong Kong Litigation, then Philips necessarily would be conceding that it is attempting to litigate the dispute at issue in the Hong Kong Litigation in this Court, in direct contravention to the

forum and choice of law provisions of the HK Agreement *and* in the absence of E&E, the contracting party.

### 2.  Rule 19(a)(2)(i):

Alternatively, even if complete relief could be granted, E&E is a necessary party under the second definition contained in Rule 19(a), which provides:

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

E&E has clear and substantial interests that relate to the subject of the action and E&E is so situated that the disposition of this action in its absence would, as a practical matter, impair or impede its ability to protect that interest under Rule 19(a)(2)(i).

As noted above, Philips expressly seeks a preliminary and permanent injunction in this action against Salton's continued importing, advertising, marketing and selling of the One:One, which Philips admits is manufactured by E&E. If such an injunction were granted, E&E's ongoing manufacturing of the One:One for Salton would be effectively terminated. (Chen Dec. ¶ 4).[7] E&E has devoted considerable resources to manufacture of the One:One and would suffer severe prejudice in the event of an injunction, including having to terminate a number of employees. (Chen Dec. ¶ 4). Yet, because E&E is not a party, it has no real say in protecting its interests.

---

[7] Even if E&E could produce the One:One without the participation of Salton – something Salton almost certainly would object to – E&E also could, as a practical matter, be deprived of any market for the One:One. Because the grant of such an injunction would necessarily require the Court to find that E&E misappropriated proprietary information from Philips in manufacturing the One:One, E&E could, as a practical matter, encounter serious problems in finding purchasers for the One:One anywhere.

The protection of contract interests of third parties has frequently been recognized as a determinative factor in the Rule 19(a) inquiry. <u>Martin Implement Sales, Inc. v. Ford New Holland, Inc.</u>, 1989 WL 31031, *3 (N.D.Ill.1989); <u>Burger King Corp. v. American Nat. Bank and Trust Co. of Chicago</u>, 119 F.R.D. 672, 677 (N.D.Ill.1988). In addition, the protection of an absent party's significant financial interests is also recognized as a determinative factor. <u>Sladak v. Bell System Management Pension Plan</u>, 880 F.2d 972, 980 (7th Cir.1989).

<u>Hashop</u>, 171 F.R.D. at 212.


3.    <u>Rule 19(a)(2)(ii):</u>

Similarly, under Rule 19(a)(2)(ii), E&E is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." As noted, necessarily the same issues will be litigated in both courts.

E&E's real and substantial interest in the subject matter of this action is unquestionably demonstrated by the fact that Philips' counterclaims (including its counterclaim for tortious interference) are all premised on the allegation that E&E misappropriated proprietary information belonging to Philips and disclosed it to Salton in breach of the HK Agreement. Thus, **any liability of Salton is dependent on a judicial interpretation of the HK Agreement's relevant provisions and a finding that E&E breached the HK Agreement**, which determinations are to be controlled by Hong Kong law under Section 36 of the HK Agreement. Similarly, Salton's requests for declaratory relief are premised on the denial of any tortious interference. Because the existence of a contractual breach is an essential element of a tortious interference claim, with contract <u>Wheel Masters, Inc. v. Jiffy Metal Products Company</u>, 955 F.2d 1126, 1129 (7th Cir. 1992), both Salton's claims and Philips' counterclaims necessarily turn on the key disputed issue of whether E&E breached its obligations under the HK Agreement in the

first instance. E&E therefore is a person to be joined if feasible under Rule 19(a). <u>Hall</u>, 100 F.3d at 479 (a judicial declaration as to a party's contractual obligations "necessarily affects, 'as a practical matter,' the interests of both parties to the contract" and thus renders them parties to be joined if feasible under Rule 19(a)); <u>Rashid v. Kite</u>, 957 F.Supp. 70, 74 (E.D. Pa. 1997)(if "the rights sued upon arise from a contract, all parties to the contract must be joined").

E&E's substantial interest here is underscored by the numerous references to E&E and its conduct with regards to the transactions at issue in both Salton and Philips' pleadings. <u>Trademark Retail, Inc. v. Apple Glen Investors, LP</u>, 196 F.R.D. 535 (N.D. Ill. 2000)(pleading's repeated references to absent party demonstrates absent party is "party to be joined if feasible").

Salton could not adequately represent E&E's interest in this litigation. Both Salton's claims and Philips' counterclaims turn on, and are inextricably intertwined with, the issue of whether E&E breached the HK Agreement. Being a non-party to the HK Agreement, as well as the parties' prior course of dealings and negotiations (Philips Counterclaims ¶¶ 17-18), Salton has neither the information nor the same incentive to adequately represent E&E's position. Moreover, Salton's interests diverge from E&E's in that Salton has taken the position in this litigation that it actively contributed to, and participated in, the development of the One:One (Salton Complaint ¶¶ 33, 34, 35, 36, 37, 40, 42). E&E disagrees with Salton concerning the nature and extent of its contributions and participation in such development. Moreover, as explained in the Chen Declaration, the E&E and Salton have divergent positions and interests as to whether certain information is, or is not, in the public domain.

In light of the foregoing, the Court should hold that E&E is a necessary party or "person to be joined if feasible" under Rule 19(a).

### B.    E&E Is An Indispensable Party Under Rule 19(b)

Once E&E is found to be a necessary party, the Court must decide, under Rule 19(b), "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as 'indispensable'." <u>Hall</u>, 100 F.3d at 479.

Rule 19(b) states:

> **(b)    Determination by Court Whenever Joinder not Feasible.  If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.**

### 1.    E&E Cannot Be Made A Party To This Action

There are three distinct reasons why E&E cannot be made a party to this action, any one of which would be sufficient to meet the Rule 19(b) standard.

First, pursuant to the choice of forum clause contained in Article 36 of the HK Agreement with Philips, "[a]ll disputes under the Agreement **shall** be settled in the courts of Hong Kong (Complaint Ex. A ¶36, emphasis added.)  Such forum selection clauses

should be enforced. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972).[8]  This

Court should not permit Philips to exploit this case as a procedural tactic to evade its

obligation to litigate with E&E in Hong Kong under Hong Kong law, given this action is

premised on the virtually identical facts as the Hong Kong Litigation.[9]  Philips should not

be permitted to do indirectly what it is forbidden to do directly.

For example, in <u>Consumers Union v. Consumer Product Safety Commission,</u> 590

F.2d 1209 (D.C. Cir 1978), <u>rev'd on other grounds <i>sub nom.</i></u> 445 U.S. 375, 384-387

(1980), the court was confronted with a Freedom of Information Act claim.  A party (the

"Submitter") submitted documents to the government requesting confidential treatment.

When a FOIA request was made for those same documents, the Submitter sued the

government for a declaration that the documents were entitled to confidential status.  The

DC Circuit held that the requesting party was a necessary party under Rule 19(a).  It then

held that, inasmuch as venue for a suit <i>by a requestor</i> is in the requestor's home state, the

requestor could not be joined to the declaratory judgment action by Submitter because

such joinder that would effectively deprive the requestor of the more favorable venue to

which it was entitled.  The requestor was, therefore, deemed "indispensable" under Rule

19(b) and the case dismissed.  While the right to favorable venue in <u>Consumer's Union</u>

was created by statute, the same principles of Rule 19(b) should apply to contractual

venue provisions.  It is clear that an indispensable party has no obligation to waive

---

[8] A forum selection clause, such as Article 36, is presumptively valid and is enforceable absent a showing that it is the result of fraud or overreaching, that enforcement would violate a strong public policy of the forum, or that enforcement in the particular circumstances of the case would result in litigation so inconvenient as to be unreasonable.  <u>RGC International Investors, LDC v. Ari Network Services, Inc.</u>, 2003 WL 21843637 at *2 (D. Del. 2003).  Here, no showing can be made that Article 36 is the result of fraud or overreaching or violate the strong public policy of this forum, particularly since the Agreement was drafted by and freely entered into by Philips. Moreover, Philips cannot contend that litigating in Hong Kong would be unreasonable, inasmuch as it was Philips who initiated the Hong Kong Litigation.

[9] Pursuant to this tactic, Philips is now pursuing broad U.S. style discovery against E&E in this action, which discovery far exceeds what it would be entitled to under Article 36 of the Agreement.

jurisdictional or venue objections it might have to an action in order to obtain protection under Rule 19. Navajo Tribe of Indians v. State of New Mexico, 809 F.2d 1455, 1472 n.25 (10th Cir. 1987)(requiring a Rule 19 party to intervene voluntarily would render Rule 19(b) nugatory).

Second, E&E cannot be made a party to this action, because its joinder would destroy the Court's subject matter jurisdiction. Salton and Philips admit that E&E is a Hong Kong corporation and that Philips is a Netherlands corporation. (Salton Complaint ¶¶ 6, 11; Philips Counterclaim ¶¶ 6, 11). Because Philips' and E&E's interests in this case are wholly adverse, E&E would necessarily have to be aligned with Salton for jurisdictional purposes as a plaintiff and counterclaim-defendant. The presence of adversely aligned alien parties, such as E&E and Philips, would destroy the Court's diversity jurisdiction over this action. Rouhi v. Harza Engineering Company, 785 F. Supp. 1290, 1292 (N.D. Ill. 1992)(complete diversity is defeated by the presence of alien parties on both sides of a suit).[10]

Third, E&E cannot be made a party to this action because this Court lacks in personam jurisdiction. The relevant agreements were made and performed in Hong Kong. The Café Senseo and the One:One were FOB Hong Kong. (Chen Dec. ¶ 7). E&E has not property or employees in Illinois and does not business in Illinois. (Chen Dec. ¶ ). Accordingly, the Court lacks personal jurisdiction over E&E.

---

[10] Philips' cannot claim supplemental jurisdiction under 28 U.S.C. § 1367, as a result of its assertion of a copyright claim against Salton. The jurisdictional grant Philips cites in its counterclaims, 28 U.S.C. § 1498 does not grant any jurisdiction here. In any event, Philips' infringement counterclaim is facially defective in that Philips nowhere alleges, as required, that its alleged copyright has been registered in accordance with the copyright statute. Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1993). Moreover, Philips cannot allege any U.S. copyright claims against E&E here because: (a) any such claim would necessarily turn on issues of contract interpretation, i.e., whether E&E exceeded its license under the HK Agreement to use any purportedly proprietary information obtained from Philips, in breach of Articles 27, 28 and 35 of the HK Agreement, and (b) Philips expressly agreed under Article 36 of the HK Agreement that all such disputes under the HK Agreement would be governed by Hong Kong law and decided in Hong Kong.

- 17 -

## 2. The Factors Cited In Rule 19(b) Support
### A Finding That E&E Is An Indispensable Party

As noted, Rule 19(b) list four factors for the Court to consider in determining if the action should go forward in the absence of E&E. The first factor cited by Rule 19(b), is "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties." That factor strongly supports a finding of E&E's indispensability. Where the resolution of a litigation in a person's absence could likely result in contradictory rulings as to that person's rights, liability or conduct, significant prejudice exists. Moore, 901 F.2d at 1448. The test here is not whether the absent party may be "technically bound" by court's ruling, but rather "whether the judgment would as a practical matter impair the non-party's interests." Shell Oil Company v. Aetna Casualty and Surety Company, 158 F.R.D. 395, 400 (N.D. Ill. 1994)(dismissing case on Rule 19(b) grounds). As discussed above, a judgment in Philips' favor could effectively preclude E&E from having a market for the One:One, thus seriously prejudicing its business and financial interests.

A judgment in Philips' favor also would seriously prejudice E&E's legal interests given that the resolution of this case necessarily turns on whether E&E breached the Agreement with Philips. See Shell, 158 F.R.D. at 400 (where court ruling would require interpretation of contract entered into by absent entity, any such ruling will be considered "highly prejudicial"); Hall, 100 F.3d at 479 ("no procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable . . . the precedent supports the proposition that a contracting party is the paradigm of an indispensable party")(citations omitted); Rashid, 957 F.Supp. at 74 (non-party is

- 18 -

indispensable where it "was a crucial link in the chain that forms the factual and legal basis for the plaintiff's cause of action"). Significant prejudice also will be found where, as here, a ruling "could constitute adverse persuasive precedent" regardless of whether the absent party would be bound under the doctrines of *res judicata* or *collateral estoppel*.[11] Doughan, 1996 WL 502288 at *2.

A judgment rendered here in E&E's absence could also seriously prejudice Philips in that it could be confronted with inconsistent judgments in this action and the Hong Kong Litigation, which would constitute prejudice to an existing party under Rule 19(b). Shell, 158 F.R.D. at 401.

The second factor under Rule 19(b) – i.e. whether the prejudice to E&E can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or other measures -- also favors a finding of indispensability. E&E's conduct and interests are inextricably intertwined with the parties' respective claims and counterclaims in this action. The grant of the central relief requested by Philips – an injunction against the future sales of the One:One – would unavoidably and seriously prejudice E&E by, *inter alia*: (a) eliminating its market for the sale of the One:One; and (b) undermining its position in the Hong Kong Litigation by the creation of adverse persuasive precedent. Such prejudice could not be lessened or avoided by protective provisions in the judgment. Similarly, as noted above, granting Salton a declaratory judgment, that it did not tortiously interfere with the HK Agreement, would not effectively settle the issue of

---

[11] Such holdings recognize that another court "may be inclined, albeit not required, to adopt an interpretation similar to that which [the first court] decides is correct." Shell, 158 F.R.D. at 401. The absent party will then have lost the opportunity to present its arguments regarding the interpretation of its contract at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated. Id.

whether E&E misappropriated Philips's intellectual property because the Hong Kong Litigation would still cloud Salton's ability to market the One:One.

The third factor under Rule 19(b) – whether a judgment rendered in E&E's absence would be adequate – also favors E&E. This factor concerns "the public interest in the complete and efficient resolution of controversies by the wholes." Shell, 158 F.R.D. at 401-402. "The courts and the public have an interest in having disputes resolved in the most efficient manner possible." Doughan, 1996 WL 502288 at *3, citing Provident Tradesmen's Bank, 390 U.S. at 111. Where, as here, interested persons have agreed to a forum selection clause, enforcement of a contract's forum selection clause is strongly preferred, as permitting the efficient administration of justice by allowing all parties to be present. Doughan, 1996 WL 502288 at *3.

The final factor under Rule 19(b) -- whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder – strongly supports a finding of indispensability. "This factor implicates not only the parties' interests, but also those of the public in avoiding piecemeal litigation." Shell, 158 F.R.D. at 402. Here, the dismissal of this action would leave Philips with exactly what it bargained for -- the right to litigate its dispute with E&E exclusively in Hong Kong under Hong Kong law – and would likely avoid piecemeal litigation in that a favorable judgment to E&E in the Hong Kong Litigation would render Philips' counterclaims moot.

The dismissal of this action also would leave Salton with an adequate remedy in that Salton could join the Hong Kong Litigation as a party, voluntarily or involuntarily. As explained in the Yen Declaration, the Hong Kong courts would welcome Salton. And unlike the situation for E&E, venue in Hong Kong would neither be inconvenient for

Salton nor a violation of any contractual rights. Salton does business in Hong Kong through an affiliate, Salton HK Limited.

Even if Salton opts not to so join, its interests would be fully protected. Its affirmative claims for relief (as opposed to the counterclaim) could be stayed pending determination of the preliminary question of whether E&E misappropriated Philips's information. If E&E prevails against Philips in the Hong Kong Litigation, this action would be largely mooted, as Philips' counterclaims would necessarily fail against Salton and Salton would be entitled to invoke collateral estoppel in seeking a judgment against Philips. Such a result would spare Salton the considerable trouble and expense of litigating this matter and would conserve scarce judicial resources.

Even if E&E were to lose in the Hong Kong Litigation, Salton would not be prejudiced, in that it would not be bound by collateral estoppel and would remain free to assert that the One:One is not based on proprietary information belonging to Philips and that proprietary information contained therein, if any, originated from sources other than Philips or E&E.

## POINT II

### IN THE ALTERNATIVE, THE COURT SHOULD ABSTAIN OR STAY THIS ACTION PENDING THE OUTCOME OF THE HONG KONG LITIGATION

Even if, for some reason, the Court does not find E&E to be an indispensable party to this action, the Court should exercise its discretion to stay this action pending the outcome of the Hong Kong Litigation.

In determining whether a federal court action should be stayed in deference to a pending foreign proceeding, the Court should first inquire as to whether the federal action is "parallel" to the foreign proceeding. The Proctor & Gamble Co. v. Alberto-Culver

Co., 1999 WL 319224 at *3 (N.D. Ill. 1999)(granting motion for stay). The two actions
need not be identical to be parallel, as long as they "feature **substantially** the same
parties litigating substantially similar issues." Id. (emphasis added); Lumen
Construction, Inc. v. Brant Construction Co., 780 F.2d 691, 694-695 (7th Cir.
1985)(affirming grant of stay, holding that where interests of parties in concurrent
litigations are congruent, the court's abstention/grant of a stay is appropriate
notwithstanding the nonidentity of the parties). [12] This standard does **not** require the
parties to, or the claims in, in the two proceeding to be identical. Lumen, 780 F.2d at
694-695 (absence of two plaintiffs and one defendant in federal action from concurrent
proceeding did not preclude stay). All that is required is that the parties and their
litigation interests in the concurrent cases be substantially similar. Lumen, 780 F.2d at
694 (issues are "substantially similar" when there is "a substantial likelihood" that the
other litigation "will dispose of all claims presented in the federal case," such as where
concurrent proceedings share a common factual underpinning); Caminiti and Iatorola,
Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 700-701 (7th Cir. 1992)(affirming grant
of stay and holding that where different parties in state and federal actions shared a
common interest in the same dispute, parties were "substantially similar").

Here, this action and the Hong Kong Litigation are clearly parallel. Philips is a
party in both litigations, as the plaintiff in the Hong Kong Litigation, and as the
defendant/counterclaim-plaintiff in this action. Although presently Salton is not a party
to the Hong Kong Litigation and E&E is not a party to this action, they are "substantially
similar" parties in that they share a common interest in both actions in denying that the

---

[12] In Lumen, the Seventh Circuit pointedly noted that if the rule were otherwise, a plaintiff could preclude
the possibility of any stay simply through careful pleading to ensure that the parties named in the two
actions are not identical. Lumen, 780 F.2d at 695.

One:One utilizes any proprietary information belonging to Philips and denying that E&E violated the HK Agreement. The issues in both litigations also are substantially similar, because they clearly share a common factual underpinning (the HK Agreement and the dealings between Philips and E&E) and because a finding in the Hong Kong Litigation as to whether or not E&E breached the HK Agreement could effectively dispose of this case.

The Court should next consider the following factors in deciding whether to stay this action:

(1) whether the court has assumed jurisdiction over a res;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which the state and federal courts obtained jurisdiction; and

(5) whether federal law provides the rule of decision.

Proctor & Gamble, 1999 WL 319224 at *6.

Under Seventh Circuit precedent, this Court should also consider:

(1)     the adequacy of the foreign proceeding to protect the plaintiff's rights;

(2)     the relative progress of the foreign and federal proceedings;

(3)     the presence or absence of concurrent jurisdiction;

(4)     the availability of removal of the state court action; and

(5)     the vexatious or contrived nature of the federal action.

Proctor & Gamble, 1999 WL 319224 at *6. The weight of each of the foregoing factors is not fixed; the weight of each depends on the particular posture of each unique case. Caminiti, 962 F.2d at 701.

- 23 -

Here, each of the foregoing factors – to the extent they are applicable here – favors the Court's abstention/grant of a stay. First, the Court here has not assumed jurisdiction over any res.

Second, the federal forum would be inconvenient, because this action is predicated on the HK Agreement and dealings between Philips (a Netherlands corporation) and E&E (a Hong Kong corporation) whose contract negotiations and dealings occurred entirely outside of the United States. The key witnesses and evidence determinative of this case simply are not located in the United States.

Third, the strong public interest in avoiding piecemeal litigation favors abstention or the granting of a stay. Here, the litigation of the underlying dispute in two forums would serve no legitimate purpose, as the dispositive issue can be – and will be – decided in the Hong Kong Litigation under Hong Kong law pursuant to the express terms of the HK Agreement. "Thus, allowing both cases to proceed would result in duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." Caminiti, 962 F.2d at 701. Moreover, the Seventh Circuit has observed that:

> When a case proceeds on parallel tracks . . . the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

Lumen, 780 F.2d at 694. Such gamesmanship by Philips is evident here. Having initiated the Hong Kong Litigation against E&E (but not joining Salton), Philips also triggered this lawsuit by threatening litigation against Salton based on the very same facts underlying the Hong Kong Litigation. Having triggered this satellite litigation, Philips has asserted a counterclaim in this action that is premised on the very same facts as those

- 24 -

underlying the Hong Kong Litigation. Philips appears to have chosen to pursue this tactic – and thereby evade its bargained-for forum – by delaying of the Hong Kong Litigation for months through repeated requests for extensions of its time to reply to E&E's counterclaims. In so doing, Philips seeks to exploit this action to obtain broad U.S. style discovery against E&E, which is not available to it under Article 36 of the HK Agreement. The Court should not tolerate of tactics that waste valuable judicial resources and undermine public respect for the legal process.

Fourth, the time order in which the HK Proceeding and this action were initiated favors abstention, as the HK Proceeding was commenced before this action.

Fifth, federal law does not provide the rule of decision here on the dispositive issue as to whether E&E breached the HK Agreement or otherwise misappropriated proprietary information from Philips. As confirmed by Article 36 of the HK Agreement and the fact that Philips initiated its counterclaims based on those issues in Hong Kong Litigation, Hong Kong law controls the dispositive issues in this case. Moreover, the fact that the Hong Kong court obviously has far greater expertise in applying Hong Kong law argues strongly for a stay of this action. See Lumen, 780 F.2d at 696 (affirming stay of civil rights action where claims were premised on state law contract issues before state court, even though civil rights claims are entitled to special protection by federal courts). The Seventh Circuit has recognized that **where federal claims are dependent on the resolution of underlying contractual disputes being litigated in another forum, a "compelling case for deference" to the other proceeding exists.** Lumen, 780 F.2d at 696.

Sixth, the Hong Kong Litigation would be adequate to protect the rights of both

Philips and Salton. Hong Kong law is based on British common law and the courts of Hong Kong are independent of the courts of the People's Republic of China. Having expressly agreed to litigate in Hong Kong under Hong Kong law and having initiated the Hong Kong Litigation itself, Philips cannot credibly assert that the Hong Kong Litigation is not adequate to protect its rights. Salton's interests also would be fully protected because its' claim and defense to the counterclaim in this action are predicated on E&E not having used proprietary information belonging to Philips in the One:One, a position fully in accord with E&E's position in the Hong Kong Litigation.

Seventh, both this action and the Hong Kong Litigation remain in their early phases, largely because of Philips' dilatory tactics in the latter.

Eighth, the Hong Kong court clearly has jurisdiction over Philips and the exclusive right to adjudicate the key issue underlying this case. Salton, to the extent it wishes to do so, is free to join the Hong Kong Litigation. In contrast, this Court lacks subject matter jurisdiction over this action, as explained above, and should refrain from adjudicating the issue of whether E&E breached the HK Agreement for reasons of international comity and because the forum selection and choice of law clause contained therein is entitled to enforcement under well established authority.

Finally, the contrived and vexatious nature of this action supports abstention and stay of this proceeding. The Seventh Circuit has noted:

> Lawyers may institute duplicative suits for any number of reasons, few of which tend to inspire judicial admiration . . . . motivated by a desire to delay the progress of the case; to impose travel burdens on one's adversary; to take advantage of procedural opportunities available in only one forum . . . .

Lumen, 780 F.2d at 693. This is precisely the case here. As noted above, Philips

commenced the Hong Kong Litigation against E&E and provoked Salton's initiation of this lawsuit by threatening litigation against Salton, based on E&E's purported breach of the HK Agreement. Having done so, Philips has asserted counterclaims against Salton that are fundamentally premised on the same allegations of wrongdoing by E&E as are alleged in the Hong Kong Litigation for the purpose of exploiting procedural opportunities available in this forum. Pursuant to that strategy, Philips has repeatedly delayed the Hong Kong Litigation through repeated requests for extensions of time to reply to E&E's counterclaims therein, while aggressively seeking broad U.S. style discovery directly from E&E and a preliminary injunction which will necessarily grievously impact E&E's interests.

## CONCLUSION

For the reasons set forth above, non-party E&E respectfully requests that its motion to dismiss this action, or alternatively, for a stay of this action be granted.

Dated: New York, New York
     November 17, 2003

Respectfully submitted,

YI TUAN & BRUNSTEIN

350 Fifth Avenue
Suite 5411
New York, New York 10118
(212) 947-3330

Of counsel:     Dean T. Cho
          Kerry E. Connolly

- 27 -

-and-


BEELER SCHAD & DIAMOND

By_____
    Lawrence W. Schad (_____)

332 South Michigan Avenue
Chicago, Illinois   60604
(312) 939-6280

- 28 -

## CERTIFICATE OF SERVICE

I, Tony Kim, an attorney, hereby certify that I caused a copy of the attached **Combined Motion and Memorandum of Law of Non-Party Electrical & Electronics, Ltd. in Support of its Motion to Dismiss or Stay,** on the people at the addresses below by on November 17, 2003 before 4:30 p.m.

Tony Kim

### Service List

Jordan A. Sigale
James A. Klenk
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
Tel: 312-876-7391
Fax: 312-876-7934

Stephen David Libowsky
J. Erik Connoly
Howrey Simon, Arnold & White, LLP
321 North Clark Street
Suite 3400
Chicago, IL 60610