Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5660 | **DATE** | 1/5/2004 |
| **CASE TITLE** | Salton, Inc. vs. Philips Domestic Appliances and Personal Care, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of Electrical & Electronics, Ltd. to dismiss [25-1] is granted. Case dismissed without prejudice. All other pending motions are denied as moot and all future dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 0 6 2004 date docketed | |
| | Docketing to mail notices. | | | 53 |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/5/2004 date mailed notice | |
| MD courtroom deputy's initials | | '04 JAN -6 PM 8:05 Date/time received in central Clerk's Office | MD mailing deputy initials | |

SALTON, INC.,

    Plaintiff/Counterclaim-defendant,

vs.      No. 03 C 5660
Judge Joan H. Lefkow

PHILIPS DOMESTIC APPLIANCES AND
PERSONAL CARE B.V.,

    Defendant/Counterclaim-plaintiff.

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of limited intervenor Electrical & Electronics, Ltd., ("E&E") to dismiss, or alternatively stay, this action involving Salton, Inc. ("Salton") and Philips Domestic Appliances and Personal Care B.V. ("Philips"). For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

This dispute centers around the production and sale of rival single-serve coffee makers. In 1998, Philips joined an ongoing project involving Sara Lee Corporation and Douwe Egberts Nederland B.V., to develop a single-serve coffee machine called "Café Senseo." According to Philips, it is a designer and seller of consumer products, but it does not always manufacture the products. For the Café Senseo, Philips initially hired E&E as its manufacturer. On November 22, 2001, Philips and E&E entered into a contract (the "Development and Purchase Agreement") requiring E&E to keep Philips' proprietary development and manufacturing information

confidential. However, the Development and Purchase Agreement allowed for the use of any information in the public domain and provided that information which belonged to the respective parties prior to their agreement was to be their own. (Compl. Ex. B. ¶¶ 27-28.) The Development and Purchase Agreement also contained a forum selection and choice of law clause which provided "This Agreement and any modification or renewal hereto shall be governed by the laws of Hong Kong. All disputes under the Agreement shall be settled in by the courts of Hong Kong." (Compl. Ex. B ¶ 36.)

In March 2002, after E&E had for some time manufactured Café Senseo coffee machines, this first generation of the product was discontinued. In January 2003, Philips began selling the Café Senseo II, which is not manufactured by E&E and is sold only in Europe. At some point thereafter, Philips discovered that E&E had been developing and/or manufacturing another coffee maker known as the "One:One," which is alleged to contain parts and features substantially similar or identical to the Café Senseo. Philips later discovered that this product was being developed for Salton, as a customer for E&E. Salton slated the launch of the product in the United States for late 2003.

In March 2003, Philips wrote to E&E alleging that during its design and manufacture of the One:One, E&E was using proprietary information which belonged to Philips and which E&E learned about through the manufacture of the Café Senseo. Philips alleged that this conduct was in breach of the Development and Purchase Agreement. Philips brought suit against E&E on May 24, 2003, in the High Court of the Hong Kong Special Administrative Region (the "HK Litigation"). In the HK Litigation, which is still pending, Philips seeks (a) an injunction against E&E's use, disclosure and dissemination of Philips' alleged proprietary information; (b) an

2

injunction against E&E's manufacturing or supplying of the One:One by itself or in conjunction with any third party; (c) an accounting of E&E's profits; and (d) interest, costs and other relief. (Compl. Ex. A ¶ 8.) In August 2003, E&E filed an answer denying Philips' claims and a counterclaim seeking monetary damages for Philips' alleged misrepresentations inducing E&E to expand its facilities to manufacture the Café Senseo II.

In June 2003, Philips sent a letter to Salton in which Philips (a) accused E&E of breaching the HK Agreement and other purported obligations by misappropriating allegedly proprietary information from Philips in the manufacturing of Salton's One:One, and (b) threatened to sue Salton for tortious interference with the Development and Purchase Agreement between Philips and E&E. That letter prompted this law suit in which Salton seeks a declaratory judgment that (a) it has not tortiously interfered with the Agreement between Philips and E&E; (b) it has not misappropriated any trade secrets belonging to Philips; and (c) the One:One manufactured by E&E does not incorporate any proprietary information belonging to Philips. (Compl. ¶¶ 60-65.) Salton rests this court's jurisdiction in diversity of citizenship under 28 U.S.C. § 1332(a)(2). It represents that it is a Delaware Corporation with its principal place of business in Illinois, while Philips is a Dutch corporation with its principal place of business in the Netherlands.[1]

Along with its answer to Salton's Complaint, Philips filed a counterclaim alleging that Salton (1) violated the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* ("ITSA"); (2) tortiously interfered with the Development and Purchase Agreement; and (3) violated certain

---

[1]The court has requested that Philips submit documentation establishing its corporate status. For purposes of this motion its representation is assigned as true.

copyrights held by Philips. Philips has further moved for a preliminary injunction, which this court is set to hear on January 8, 2004. All of these developments prompted E&E to intervene for the limited purpose of bringing the present motion seeking dismissal of this action in its entirety under Federal Rule of Civil Procedure 12(b)(7). In the alternative, E&E seeks a stay of this action pending the outcome in the HK Litigation.

## DISCUSSION

Before addressing the merits of E&E's motion, the court must address the issue of standing in this suit. On December 11, 2003, this court granted E&E's motion for limited intervention for the purpose of presenting its motion to dismiss. The court takes a moment to explain its ruling. Absent this limited intervention, the court would have had no power to entertain E&E's motion. *See Thompson v. Boggs*, 33 F.3d 847, 858 n.10 (7th Cir. 1994) ("We add that the plaintiff has failed to direct us to any case, nor have we been able to locate any case, in which a court granted a motion to join made by a non-party to the lawsuit. It would seem that the proper course of action would be a motion to intervene under Fed.R.Civ.P. 24."). Moreover, as will be seen below, E&E meets the standard for intervention as of right under Rule 24(a)(2) in that it has an interest in the subject matter of this action. *See, e.g., Navajo Tribe of Indians v. State of New Mexico*, 809 F.2d 1455, 1472 n.25 (10th Cir. 1987) ("A party satisfying Rule 19(a)(2)(i), and yet not joined, thus requiring a Rule 19(b) analysis, would always satisfy the prerequisites for intervention as of right under Fed.R.Civ.P. 24(a) . . . ."). For these reasons, the court allowed E&E to intervene for the limited purpose of presenting its motion to dismiss. *See, e.g., Southern Utah Wilderness Alliance v. Babbitt*, No. 99 CV 852K, 2000 WL 33363302, at *1 (D. Utah Aug. 4, 2000) (allowing limited intervention by non-party to present motion to dismiss

4

for failure to join indispensable parties), *appealed on other grounds*, 301 F.3d 1270, *cert. granted* 124 S.Ct. 462 (2003).[2]

Under Federal Rule of Civil Procedure 12(b)(7), a case may be dismissed for "failure to join a party under Rule 19." The court's first task in a Rule 19 analysis is to determine whether E&E is a necessary party. *See United States ex rel. Hall* v. *Tribal Dev. Corp.*, 100 F.3d 476, 478 (7th Cir. 1996). If E&E is in fact a necessary party, and if it cannot be joined in this action, then the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b).

1. *Is E&E a necessary party?*

Under Rule 19(a), a person qualifies as a necessary party if

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

E&E believes it is a necessary party based on (1) and (2)(i) set out above. It argues that in its absence complete relief cannot be afforded among Salton and Philips and that any disposition in this action will impair its ability to protect its interests. For its claim that complete relief cannot be afforded, E&E argues that Philips seeks to permanently enjoin any "manufacture" of

---

[2]The court pauses to note the effect the procedural peculiarities of this case have produced. In perhaps the normal Rule 19 scenario, a defendant brings a motion for failure to join the indispensable party, and the plaintiff, who brought the suit, would be opposed to the motion. This is not the situation here. The party most vigorously disputing the Rule 19 issues is the defendant/counterclaim-plaintiff, Philips. The plaintiff/counterclaim-defendant, Salton, states that E&E is a "central" party and that "it is unlikely there will be a full and complete resolution of claims asserted by Philips, E&E and Salton unless all three parties are in the same forum."

5

the One:One. Since E&E represents that it is the manufacturer of the product, it argues this court cannot grant such relief unless it is a party. However, E&E and Salton have a dispute between themselves as to the ownership of the One:One's technology. Salton apparently believes it is the "sole and exclusive owner" of the technology contained in the One:One and may terminate E&E's right to manufacture the product, while E&E disagrees. Accordingly, with this dispute not resolved, the court is unable to determine whether complete relief can be accorded to Salton and Philips.

Nevertheless, for a number of reasons the court is persuaded that E&E has an interest in this litigation and its ability to protect that interest may well be impaired if it is not a part of this action. This conclusion stems from the possibility (or perhaps likelihood) that many of the claims between Salton and Philips would require reference to the actions of E&E and a determination of whether such actions were in violation of the Development and Purchase Agreement. For example, both Salton and Philips bring claims concerning tortious interference with contract, with Salton seeking a declaration that it did not interfere and Philips alleging that Salton did. The alleged contract is the Development and Purchase Agreement. As E&E points out, an essential element to a tortious inference with contract claim is that a breach of contract did in fact occur. *See Wheel Masters, Inc. v. Jiffy Metal Prods. Co.*, 955 F.2d 1126, 1129 (7th Cir. 1992) ("[T]he elements of a tortious interference with contract claim are as follows . . . (3) a subsequent breach by the third party caused by the defendant's wrongful conduct . . . ."). Thus, resolution of the tortious inference claim will first require the court to confront the issue of whether E&E breached its obligations under the Development and Purchase Agreement, an issue

6

which is governed by Hong Kong law and is being litigated in the HK Litigation. *Cf.*

*Professional Hockey Club Cent. Sports Club of the Army* v. *Detroit Red Wings, Inc.*,

787 F. Supp. 706, 712 (E.D. Mich. 1992) (concluding that hockey player at the center of contract dispute between two teams was a "party who should be joined if feasible" because in examining plaintiff's tort claim, the court would be "forced to analyze the underlying contractual dispute" between the player and the defendant and any finding of contractual interference by defendant "will also necessarily be holding that that contract is valid and enforceable."); *Ente Nazionale Idrocarburi* v. *Prudential Sec. Group, Inc.*, 744 F. Supp. 450, 460 (S.D.N.Y. 1990) (noting that party to a contract was both necessary and indispensable in tortious interference action because "it is clear that the type of tort alleged is so entangled with and, in fact, derived from the contractual relationship that we would be compelled to adjudicate the breach of contract claim while deciding the tort claim.").[3]

There is also the issue of the trade secret claim that Philips alleges against Salton (and Salton's request for a declaration that it used no such trade secrets). Despite Philips' argument to the contrary, the court views this claim as inextricably intertwined with the breach of contract claim set forth in the HK Litigation. Philips' counterclaim makes clear that any proprietary information Salton obtained would have come from E&E. (*See* counterclaim ¶ 68 "On information and belief, Salton learned to do the build-up in this way by learning of it from E&E on the basis of the confidential, non-public, proprietary and trade secret information shared with

---

[3]The court does not view *Arkansas* v. *Texas*, 346 U.S. 368 (1953), as to the contrary. In that case the Court ruled that a third party was not an indispensable party to a suit brought by the State of Texas against the State of Arkansas alleging interference with contract. Thus far this court has only considered whether E&E is a necessary party, not an indispensable one. Moreover, after *Arkansas* the Court has made clear that a finding of indispensability "can only be determined in the context of the particular litigation." *Provident Tradesman Bank & Trust Co.* v. *Patterson*, 390 U.S. 102, 118 (1968).

E&E by Philips under conditions of confidentiality", and ¶ 111 "Salton misappropriated Philips trade secrets by obtaining them from E&E without Philips' consent and using them in the design and creation of Salton's One:One appliance."). Indeed, one of Salton's defenses to the trade secrets claim is that the technology at issue belongs to E&E and not to Philips.

If, in fact, it were found that the information at issue in this case were protectable trade secrets, as a necessary corollary, this would establish that E&E had breached its contractual relationship with Philips. Philips itself alleges that any trade secrets Salton misappropriated would have been supplied by E&E, thereby requiring the court to adjudicate the rights of E&E under the Development and Purchase Agreement in resolving the trade secret claim. Significantly, Salton hints at such a result and explains that it cannot adequately represent E&E's interest in this action and without E&E's assistance it will be proceeding without a "central party." (*See* Salton resp. at 3: "[I]t is unlikely there will be a full and complete resolution of claims asserted by Philips, E&E and Salton unless all three parties are in the same forum.").

It is well established that when a court interprets or declares rights under a contract, the parties to that contract are necessary parties to the action. *See, e.g., Hall*, 100 F.3d at 479-80 (noting that this sweeping declaration "has its limits" but remarking that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable.") (bracket in original) (citing *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)); *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 400 (N.D. Ill. 1994) (noting that the court was required to "interpret the terms, conditions and exclusions" contained in insurance contracts, which would be "highly prejudicial" to absent parties). While the action

8

here does not seek to set aside the contract between Philips and E&E, nevertheless, resolving the claims will require some interpretation of the Purchase and Development Agreement between E&E and Philips. Given that E&E and Philips are currently embroiled in litigation over their agreement, there can be little doubt that E&E has an interest in any interpretation or findings which would take place here.

As for how E&E's interest may be impaired, it is unlikely that any findings made here concerning the proprietary information would carry res judicata effect in the HK Litigation, but it still may prejudice E&E. For example, as courts have noted, the "practical" effects of such a ruling is that it may have persuasive value in the HK Litigation. *E.g., Shell Oil*, 158 F.R.D. at 401 ("While the [non-parties] . . . may not be precluded from relitigating the meaning of their own policies in state court, a state court may be inclined, albeit not required, to adopt an interpretation similar to that which this court decides is correct. The [non-parties], then, will have lost the opportunity to present their arguments regarding the interpretation of their policies at the time when they would be the most forceful . . . ."); *Martin Implement Sales, Inc. v. Ford New Holland, Inc.*, No. 87 C 8883, 1989 WL 31031, at *3 (N.D. Ill. March 29, 1989) ("[T]he Court cannot ignore the persuasive value that its determination in this case might be accorded in a later suit brought . . . against defendant to protects its own contractual rights."). Furthermore, E&E would also be prejudiced because any ruling concerning the Purchase and Development Agreement made here would be reached without E&E being able to present evidence defending its actions. *See Haslop v. Federal Home Loan Mortgage Corp.*, 171 F.R.D. 208, 212 (N.D. Ill. 1997) (in situation where judgment against the defendant would result in conclusion that alleged

9

indispensable party engaged in prohibited conduct, not giving the indispensable party "an opportunity to defend their actions and their interests would be prejudicial.").

Because E&E has an interest in the events taking place in this litigation, and because its absence may impair or impede that interest, the court concludes that E&E is a necessary party to this litigation.

*2.    Can E&E be joined?*

According to E&E, it cannot be joined in this action for two reasons. First, it asserts that pursuant to Section 36 of the contract with Philips, "[a]ll disputes under the Agreement shall be settled in the courts of Hong Kong." (Compl. Ex. A ¶ 36.) Second, E&E asserts that its inclusion in this case would destroy this court's subject matter jurisdiction. Because the court agrees that E&E's inclusion in this case would deprive it of subject matter jurisdiction, the court addresses only that issue.

Salton originally filed this action invoking this court's jurisdiction under 28 U.S.C. § 1332(a)(2). It represented that it was a Delaware Corporation with its principal place of business in Lake Forest, Illinois while Philips was a Dutch corporation with its principal place of business in the Netherlands. The court ordered the parties to submit supplemental briefing on the issue of E&E's citizenship. While the parties initially treated E&E as an alien corporation, and listed its state of incorporation and principal place of business as both being in Hong Kong, E&E itself was only referred to as a Hong Kong entity which is "Limited." This caused the court to wonder how an entity which is "Limited" under Hong Kong law is to be treated for purposes of diversity jurisdiction. Pursuant to the court's order, E&E submitted a memorandum describing its status. E&E attached its "Certificate of Incorporation" under Hong Kong law, and further

10

noted that it (1) issues shares; (2) is governed by directors; (3) has perpetual duration; (4) contracts in its own name; (5) owns property in its own name; and (6) files its own tax returns and pays its own taxes. These facts convince the court that E&E is to be treated similar to a corporation under state law. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, __F.3d__, 2003 WL 23022039 (7th Cir. Dec. 30, 2003) (concluding that entity which was "Limited" under Bermuda law was to be treated similar to a corporation under state law for diversity purposes because "[i]t is an entity with perpetual existence, governed by a Board of Directors, able to issue tradeable shares . . ., and treated as independent of its equity investors–who are neither taxable on its profits nor liable for it debts."). As stated above, both E&E's state of incorporation and principal place of business is Hong Kong.

Because E&E is to be treated as an alien corporation, there can be little doubt that its presence in this suit causes jurisdictional dilemmas. No party disputes that when a mixture of foreign and domestic parties are present on one side of a suit (*i.e.*, Salton and E&E) and the other side contains only foreign parties (*i.e.*, Philips), diversity jurisdiction under both § 1332(a)(2) & (3)[4] is destroyed. *See, e.g., Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.*, 10 F.3d 425, 427-28 (7th Cir. 1993) (noting that diversity jurisdiction statute "does not permit a suit between foreigners and a mixture of citizens and foreigners."); *Spearing v. National Iron Co.*, 770 F.2d 87, 90 (7th Cir. 1985); *see also, Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 627 (7th Cir. 1998) ("We noted in *Allendale* that courts have rejected jurisdiction in suits where 'one side of the litigation had only foreign parties and the other had a mixture of foreign and domestic

---

[4]Section 1332(a)(2) provides that district courts shall have diversity jurisdiction when a suit is between "citizens of a State and citizens or subjects of a foreign state." Section 1332(a)(3) grants jurisdiction when the suit is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."

11

parties,' because such a case does not fit within any of the statute's jurisdictional pigeonholes."); *Israel Aircraft Indus. Ltd.* v. *Sanwa Bus. Credit Corp.*, 16 F.3d 198, 202 (7th Cir. 1994) ("[T]he statute creating the diversity jurisdiction does not contemplate an alignment of alien versus citizen plus alien."); *Eze* v. *Yellow Cab Co. of Alexandria, Va., Inc.*, 782 F.2d 1064, 1065 (D.C. Cir. 1986). As it stands, E&E must be aligned with Salton in this case, as the interests of both those parties are adverse to Philips. While Philips argues that E&E and Salton must not be aligned because they disagree over whether E&E has an independent right to manufacture the One:One, that dispute is of only marginal relevance here and pales in comparison to the real dispute concerning the proprietary information between Philips and E&E and Salton's alleged use of that information. Moreover, Philips provides no support for its suggestion that E&E may be joined as a third party with interests divergent from both Philips and Salton.[5]

In further response to the jurisdictional problems, Philips suggests that this court's original jurisdiction under § 1331 is invoked by virtue of its copyright claim arising under federal law. The copyright claim, however, was raised in Philips' counterclaim. In *Adkins* v. *Illinois Cent. R.R. Co.*, 326 F.3d 828, 836 (7th Cir. 2003), the Seventh Circuit noted the Supreme

---

[5]Philips also argues that if E&E is to be joined, it should be joined under Federal Rule of Civil Procedure 13(h) as a third party defendant to Philips' counterclaims. Philips submits that if E&E were so joined, this court's subject matter jurisdiction would remain intact. *See The Hartford Steam Boiler Inspection and Ins. Co.* v. *Quantum Chem. Corp.*, No. 91 C 6907, 1994 WL 494776, at *2-4 (N.D. Ill. Sept. 8, 1994). Philips argues for this result by characterizing E&E's claim as suggesting "that Philips should have added E&E as an additional counterclaim defendant . . . to the tort claim it asserted against Salton." Initially, this argument is certainly questionable in light of the Hong Kong forum selection clause between Philips and E&E, and the court does not find Philips' argument that such claims would fall outside the clause to be persuasive. More fundamentally, however, as the court sees it, the problem with this argument is that many of Salton's claims and Philips' counterclaims are essentially mirror images of one another. For example, Salton seeks a declaration that it did not tortiously interfere with the Development and Purchase Agreement and that it did not misappropriate any trade secrets, while Philips argues that trade secrets were misappropriated and that Salton did tortiously interfere with the Agreement. Therefore, E&E is not a necessary party only by way of Philips' counterclaims, but is also necessary for the claims that Salton asserts against Philips. As such, the court rejects this argument.

Court's ruling in *Holmes Group, Inc. v. Vorndao Air Circulation Systems, Inc.*, 535 U.S. 826 (2002), where the Court dealt with the issue of "whether the Court of Appeals for the Federal Circuit had appellate jurisdiction over a case in which the complaint did not allege a claim under the federal patent law, but a compulsory counterclaim filed pursuant to Rule 13(a) of the Federal Rules of Civil Procedure did." *Adkins*, 326 F.3d at 836. As the Seventh Circuit explained, the Supreme Court's discussion consisted mostly of "general consideration of the well-pleaded complaint rule . . . ." *Id.* The Supreme Court reaffirmed in *Holmes Group* that "a counterclaim–which appears as part of the defendant's answer, not as part of the plaintiff's complaint–cannot serve as the basis for 'arising under' jurisdiction." 535 U.S. at 1894; *see also, Adkins*, 326 F.3d at 836 ("If the plaintiff's well-pleaded complaint is not based on a federal question, there is no § 1331 jurisdiction."). The Seventh Circuit summarized the *Holmes Group* ruling by stating "[t]o allow even a compulsory counterclaim to govern jurisdiction would potentially defeat the plaintiff's choice of forum and 'radically expand the class of removable cases." *Adkins*, 326 F.3d at 836 (quoting *Holmes Group*, 535 U.S. at 1894). Based on these binding precedents, there can be no question that Philips' counterclaim, even if compulsory, cannot serve as the basis for this court's jurisdiction under § 1331.

Thus, the court must conclude that if E&E were to be joined in this action, the court would no longer have subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) or (3).

3.  *Is E&E an indispensable party?*

After concluding that E&E is a necessary party which cannot be joined, the next step is determining "whether in equity and good conscience the action should proceed without the absent party." *Hall*, 100 F.3d at 479 ("'indispensable' is merely the label applied to the absent

13

party in the event that the court should answer this question in the negative."). To "help courts navigate the path of equity and good conscience", *id.*, Rule 19(b) lists the following four factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The first factor–concerning prejudice to E&E–involves many of the same considerations the court analyzed in concluding that E&E is a necessary party. *See Hall*, 100 F.3d at 479. The court notes, however, that this factor also warrants consideration of the prejudice to those already parties to this action. In that regard, Salton stands to be prejudiced in this action if E&E is not included. Salton states that it originally filed this action with the belief that E&E, its manufacturer, would assist in discovery so that Salton could prevail on its claim. However, due to E&E's belief that this action would allow Philips to avoid its agreed Hong Kong forum selection clause, that assistance has not been forthcoming. Moreover, Salton admits that without E&E it will not be able to move forward on one of its main defenses, that the technology at issue belongs to E&E and not Philips. Thus, because of the prejudice to both E&E and Salton, this factor weighs in favor of dismissal.

Some courts, in analyzing this factor, have also focused on whether the interests of the absent party are adequately protected by those present in the law suit. *See Professional Hockey Club Cent. Sports Club of the Army*, 787 F. Supp. at 713. There can be little question here that E&E's interest cannot be adequately protected by Salton. Salton admits as much, noting that only E&E has first-hand knowledge (1) of its dealing with Philips; (2) of the development and

design of the internal workings of the One:One; (3) of E&E's software engineer computer programming for the One:One; and (4) of the manufacturing process. Salton also admits that it has no evidence to support E&E's theory that the technology at issue is the property of E&E and not Philips. Because Salton cannot adequately represent E&E, this factor would further weigh in favor of dismissal.

The second factor–whether a judgment could be shaped to lessen any potential prejudice–also weighs in favor of dismissal. Philips argues that the court can craft a preliminary injunction which makes clear that Philips has established only a likelihood of success on the merits with a full determination to follow at trial. But this argument avoids the real issue in that E&E seeks dismissal of this action in its entirety. E&E's motion does not only address the preliminary injunction. Philips' argument has not persuaded the court that any judgment in this case could be formulated to lessen any prejudice to E&E.

The third factor is whether a judgment rendered in E&E's absence would be adequate. As the Supreme Court has counseled, this factor refers at least in part "to [the] public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them." *Provident Tradesman Bank & Trust v. Patterson*, 390 U.S. 102, 111 (1968) ("there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505 (7th Cir. 1980) ("This factor concerns the public interest in the complete and efficient resolution of controversies by wholes."). Applied here, this factor strongly favors dismissal. This case cries out for an adjudication in one forum between all three parties. Because of

jurisdictional problems, a complete adjudication cannot take place here and may only be possible in Hong Kong. Nevertheless, this factor would weigh in favor of dismissal of this action because of the public interest in seeing this case adjudicated between all three parties in one forum.

Finally, considering the fourth factor–whether an adequate remedy exists if the action is dismissed for nonjoinder–the answer is clearly yes. It is worth noting that the actual plaintiff in this action, Salton, admits that it could litigate its claims in Hong Kong and is prepared to do so "so long as there is movement to lifting the cloud Philips has placed over the One:One coffee maker." The party who does not believe an adequate remedy exists elsewhere is Philips, despite the fact that it has a contract with E&E containing a Hong Kong choice of law and forum selection clause. Without citation to authority, Philips asserts that it may not have a remedy for its ITSA and copyright claims because it is not "established that the Hong Kong court could apply ITSA and United States copyright law . . . ." The court disagrees. *See Omron Healthcare Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (sending trademark claim to be litigated in England); *Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993) (forum selection clause sending fraud and securities claim to England). Thus, this final factor also suggests that dismissal is appropriate.

Weighing all of the above factors, the court concludes that in equity and good conscience this action should not proceed without E&E. Since it cannot be joined without destroying this court's subject matter jurisdiction, E&E's motion to dismiss is granted.

## CONCLUSION

For the reasons stated above, E&E's motion to dismiss is granted [#25]. This action is dismissed without prejudice. All other pending motions are denied as moot. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: January 5, 2004